[Civ. No. 3742. Third Appellate District.—September 17, 1929.]

P. H. GLANTZ, Respondent, v. CHARLES FREEDMAN, Appellant.

T. B. Scott for Appellant.

Nutter, Hancock & Rutherford for Respondent.

FINCH, P. J.—The plaintiff as principal and the defendant as agent entered into a contract for the sale of the former's grapes by the latter. The contract contains the following:

"It is therefore agreed that the said principal hereby appoints the said agent as his sole and exclusive agent for selling said grapes f. o. b. cars shipping point for the account of principal, unless written instructions are delivered to the said agent to consign same, and agrees to pay said agent the sum of 20 cents per lug or packed crate as his entire compensation for furnishing lugs, receiving, loading and for sale of said grapes. Boxes to be furnished by agent at Lodi, California, and principal agrees to pick and deliver grapes to agent at packing house or railroad cars, in compliance with federal, state and county rules."

At the time of the transactions between the parties, the defendant was engaged in the fruit business at Modesto, Lodi and other places. He maintained an office at Modesto, but not at Lodi. His "representatives or agents" at Lodi were Fred Wall and John Wittmayer. Wittmayer executed the contract in question as the defendant's agent. When the contract was presented by Wittmayer to the plaintiff for execution, the latter refused to sign it. Wittmayer thereupon wrote the defendant, asking for an interpretation of the form of contract used. The defendant's bookkeeper wrote Wittmayer in reply that "if immediate sale is not effected we will take the stuff on ourselves at the market price and pay on that basis." This letter was signed,

"Chas. Freedman, per O. J. J.," the bookkeeper's name being O. J. Jennings. Wittmayer showed the letter to the plaintiff and he thereupon signed the contract. Respondent contends that the letter is a part of the contract between the parties. It is deemed unnecessary to decide this question, there being other sufficient grounds upon which to affirm the judgment. The complaint alleges:

"That within two years last past plaintiff sold and delivered to defendant at defendant's instance and request, 1467 boxes of Tokay grapes at an agreed purchase price or value of the sum of $1,834.40. That no part of said sum has been paid by defendant to plaintiff except the sum of $829.46. . . . That the said price . . . was the reasonable value thereof, and the market value thereof at the dates when the same were sold and delivered."

The answer denies that the plaintiff sold any grapes to the defendant and alleges that the plaintiff "consigned certain grapes to defendant; that defendant sold the same pursuant to agreement and has fully accounted to plaintiff and paid over to plaintiff all moneys due from defendant to plaintiff." The plaintiff was given judgment and the defendant has appealed.

Appellant contends that there is a fatal variance between the allegations of the complaint and the proof, in that the complaint sets up an express contract of sale while the evidence shows that the grapes were consigned to the defendant to be sold by him as agent for the plaintiff.

The relation between the parties created by the contract was that of principal and factor. (Civ. Code, sec. 2026.) Instead of selling the grapes at the shipping point, as required by the contract, the defendant shipped most of them to the eastern markets, where they were sold for but a trifling sum above freight and other expenses. The plaintiff testified that he did not authorize the defendant, either in writing or orally, to sell the grapes at any place other than the shipping point. Having sold them in violation of the terms of the contract, the defendant became liable for their net market value at the shipping point at the time of their delivery. (*Betts* v. *Southern California Fruit Exchange*, 144 Cal. 402 [77 Pac. 993].) "In many cases . . . the principal may treat the unauthorized sale not merely as a breach of contract, but as a conversion of

the goods." (Mechem on Agency, 2d ed., sec. 2529; *Pugh* v. *Porter Brothers Co.,* 118 Cal. 628, 633 [50 Pac. 772].) "It is well settled under the authorities that when one's goods are wrongfully taken and used by another, he may waive the tort and sue in *assumpsit* for their value, as for goods sold and delivered." (*Miller* v. *Murphy,* 186 Cal. 344, 349 [199 Pac. 525, 528]; *Armstrong* v. *Kubo & Co.,* 88 Cal. App. 331, 334 [263 Pac. 365]; 3 Cal. Jur. 377, 380.) "In many jurisdictions this doctrine is limited to cases where the wrongdoer has sold the property or otherwise converted it into money, in which event the plaintiff may maintain an action for the proceeds (4 Cyc. 332). In this state, however, as in a number of others, a broader rule enables one whose goods are wrongfully taken and used by another to sue in *assumpsit* for their value as for goods sold and delivered." (*Bechtel* v. *Chase,* 156 Cal. 707, 711 [106 Pac. 81, 83].) ■ Tested by the foregoing authorities, there is no variance between the allegations of the complaint and the proof.

■ It is next contended that "evidence on market value was admitted without the proper foundation having been laid." The basis of a witness' estimate "may include the result of inquiries made of others, commercial circulars, correspondence, or telegrams, market quotations or reports, price lists, prices current, or the facts of relevant sales known to the witness." (22 C. J. 575.) In *Betts* v. *Southern California Fruit Exchange,* 144 Cal. 402, 409 [77 Pac. 993, 995], it is said: "The testimony of the plaintiff with reference to the market price of the lemons was not incompetent merely because his knowledge was derived from the information of others. . . . The market price of an article is often shown by reference to the published statements of that fact." ■ Under the rules quoted, the evidence shows ample foundation for the estimates of the witnesses.

■ Appellant contends that respondent's remedy was an action for damages for breach of contract. While such an action was doubtless available to the plaintiff, it is clear from the authorities cited herein that it was not the exclusive remedy.

The judgment is affirmed.

Plummer, J., and Thompson (R. L.), J., concurred.