[S. F. No. 11809. In Bank.—May 21, 1926.]

## COMMONWEALTH ACCEPTANCE CORPORATION (a Corporation), Petitioner, v. FRANK C. JORDAN, as Secretary of State, etc., Respondent.

[1] CORPORATIONS — FOREIGN CORPORATIONS — COMITY.—A foreign corporation, that is, a corporation organized under the laws of one or other of the American states, derives the right of doing business in other states than that of its creation through the application of the doctrine of comity between states.

[2] ID.—LAWS OF DIFFERENT STATES—COMITY—JUDICIAL NOTICE.—Courts must take judicial notice that the laws of the various

---

1. See 7 Cal. Jur. 197; 12 R. C. L. 8.
2. Right of foreign corporation to make contracts and transact business, not contrary to laws of the place, note, 24 L. R. A. 290. See, also, 7 Cal. Jur. 199; 12 R. C. L. 12.

states which regulate and prescribe the method for the organization and the measure of the powers of private corporations differ widely, resulting in many decisions involving the application of the doctrine of comity to corporations seeking to enter other states than those of their creation for the purpose of transacting business therein, and out of this diversity has been evolved a rule that corporations which may have been organized in one state in accordance with statutory methods which do not obtain in other states, or have been given powers which corporations organized in other states do not possess, or which have different stock structures, or which have imposed different measures of liability or limitation of liability upon their stockholders, or which have invested such stockholders with divergent voting powers than those allowable in states other than that of their origin, may still be permitted to enter such other states and transact business therein under the doctrine of comity, in the absence of express constitutional or statutory inhibitions on the part of those states which such foreign corporations thus seek to enter.

[3] ID. — FOREIGN CORPORATION HAVING STOCK OF DIFFERING PAR VALUES—RIGHT TO TRANSACT BUSINESS IN THIS STATE.—A corporation duly organized under the laws of a sister state and having a stock structure composed of stock of differing par values, by virtue of the doctrine of comity between states, and in the absence of statutory or constitutional inhibition, may enter this state and transact business here, even though a corporation with such a stock structure would not be entitled to organize as a domestic corporation or to receive a certificate of incorporation as such under the laws of this state.

[4] ID.—BUSINESS OF FOREIGN CORPORATION—ARTICLES OF INCORPORATION.—The business which a foreign corporation transacts or seeks to transact in the state which it may desire to enter is the business which is contemplated in the expressed purposes of its creation as set forth in its articles of incorporation.

[5] ID. — VOTING — MANDAMUS TO COMPEL SECRETARY OF STATE TO FILE CERTIFIED COPY OF CERTIFICATE OF INCORPORATION. — The question as to whether the stockholders of a foreign corporation have or have not an equality of voting power in the management of its internal affairs is not involved in a proceeding in *mandamus* brought by such foreign corporation to compel the Secretary of State to receive and file in his office a duly certified copy of its certificate of incorporation, together with certain other required documents, and to accept the amount of the license fee tendered therewith.

[6] ID.—STOCKHOLDERS' LIABILITY.—In a proceeding in *mandamus* by a foreign corporation to compel the Secretary of State to receive and file in his office a duly certified copy of its certificate

of incorporation, together with certain other required documents, and to accept the amount of the license fee tendered therewith, conceding, for the sake of argument, that the regulations which a corporation adopts as to the basis of liability of its stockholders has such a relation to the transaction of its business as declared in its articles of incorporation as to bring it within the terms of section 15 of article XII of the constitution, it does not follow therefrom that the permit of the petitioner should be denied.

(1) 14a **C. J.,** p. 1217, n. 44.    (2) 15 **C. J.,** p. 1181, n. 56; 23 **C. J.,** p. 134, n. 33 New.    (3) 14a **C. J.,** p. 1220, n. 60, 61.    (4) 14a **C. J.,** p. 1234, n. 62.    (5) 14a **C. J.,** p. 1327, n. 51.    (6) 14a **C. J.,** p. 1264, n. 21.

PROCEEDING in Mandamus to compel Secretary of State of file a certified copy of certificate of incorporation of foreign corporation, etc.    Writ granted.

The facts are stated in the opinion of the court.

Arnold C. Lackenbach, Dunne, Brobeck, Phleger & Harrison and Frank S. Richards for Petitioner.

U. S. Webb, Attorney-General, Robert W. Harrison, Chief Deputy Attorney-General, William F. Cleary, Deputy Attorney-General, and Lionel B. Browne for Respondent.

Wm. M. Abbott, K. W. Cannon, Allen G. Wright, Charles A. Son, John P. Beale, William H. Orrick, Alfred Sutro, McCutchen, Olney, Mannon & Greene, Bauer, Wright & Macdonald, Farrand & Slosson, Flint & MacKay, Gibson, Dunn & Crutcher, Lawler & Degnan, Loeb, Walker & Loeb, Newlin & Ashburn, Overton, Lyman & Plumb, and Page, Nolan, Rohe & Hurt, *Amici Curiae* on Behalf of Petitioner.

RICHARDS, J.—This application is for the issuance of a writ of mandate requiring the respondent, as Secretary of State of the state of California, to receive and file in his office a duly certified copy of the certificate of incorporation of the petitioner, a corporation organized in and under the laws of the state of Delaware, together with certain other required documents, and to accept the amount of the license fee tendered therewith, all of which the respondent, as such

Secretary of State, is alleged to have refused to do. The said documents and fees were tendered to the respondent for his acceptance and filing as a prerequisite to the qualification of the petitioner herein, a foreign corporation, to transact business as such within the state of California. The respondent's return to the alternative writ issued herein is in the form of a demurrer to the sufficiency of the petitioner's said application. The grounds upon which the respondent bases his refusal to receive and file the petitioner's aforesaid documents or to accept its tendered fees appear upon the face of its said application in the form of a letter to the petitioner wherein the reasons for his action are set forth. They are in substance that whereas it appears upon the face of the petitioner's application that it is a foreign corporation organized and existing under the laws of the state of Delaware, and whereas it appears from its articles of incorporation which are appended to its said application that its stock capitalization is represented by shares of different par values, that is to say, of fifty thousand shares of preferred stock of the par value of ten dollars per share, of fifty thousand shares of class "A" common stock of the par value of ten dollars per share, and of five hundred shares of class "B" common stock without nominal or par value, it is not such a foreign corporation as can be permitted to qualify for the transaction of business in this state under the authority of *Del Monte L. & P. Co.* v. *Jordan,* 196 Cal. 488 [238 Pac. 710]. The respondent further states in his said letter that for the above reasons "it is impossible to subject the stockholders thereof to the liability to California creditors which is imposed by section 322 of the Civil Code, and therefore such foreign corporation, if admitted to the state, would be able to transact business therein on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this state, in violation of section 15, article XII of the California constitution." The foregoing grounds of his aforesaid refusal as thus set forth present the two main questions before us in this proceeding. These relate, first, to the status of foreign corporations in respect to their right or privilege to engage in intrastate business in this state, and, second, to the interpretation to be placed

upon section 15 of said article XII of the state constitution as affecting such right or privilege.

It is a conceded fact herein that the petitioner, a corporation organized in and under the laws of the state of Delaware, had in all respects in its said organization complied with the laws of Delaware, and hence that under the laws of that state corporations such as this could be legally organized with a capital stock structure having certain shares of stock of a fixed par value and certain other shares of stock of a nominal or no par value. It may also be conceded that such a corporation, if attempted to be organized in this state with a like stock structure, would not be entitled to receive from the Secretary of State a certificate of incorporation under the rule laid down by this court in *Film Producers Co.* v. *Jordan,* 171 Cal. 664 [154 Pac. 605], and *Del Monte L. & P. Co.* v. *Jordan,* 196 Cal. 488 [238 Pac. 710]. The first question herein presented is as to whether the rule declared in the above-cited cases as applicable to California corporations is also to be given application to foreign corporations duly organized under the laws of the state of their creation.

[1] A foreign corporation, that is to say, a corporation organized under the laws of one or other of our American states, derives the right of doing business in other states than that of its creation through the application of the doctrine of comity between states. It is not necessary to go afield for authorities stating the origin of this doctrine or showing that it is deeply rooted in those fundamental principles of our nationality which found expression in our federal constitution and in the interpretation thereof by the supreme court of the United States. (See *Bank of Augusta* v. *Earle,* 38 U. S. (13 Pet.) 519–538 [10 L. Ed. 274, see, also, Rose's U. S. Notes].) The doctrine has been fully recognized and clearly stated in the decisions in many states and has been well set forth in 14a Corpus Juris, page 1217, as follows: "Under principles of comity, and except as otherwise provided by constitutional or statutory provisions, a corporation created by any state or nation is permitted to enter other states, and there to exercise all legitimate powers conferred upon it and to carry on as a corporation any business not prohibited by the local laws or against local public policy. The rules of comity are subject

to local modification by the law-making power. But until so modified they have the controlling force of legal obigation, and it is the duty of the courts to observe and enforce them until the sovereign otherwise directs. The comity in- volved is the comity of the state, not of the courts, and the judiciary must be guided by the principles and policy adopted by the legislature. . . . Statutes authorizing foreign corporations to do business within the state and prescribing the terms and conditions upon which they shall be permitted to do so have been almost universally adopted, and their construction and application forms a large part of the law of foreign corporations. Upon compliance with such stat- utes the foreign corporation may transact business within the state as if under a franchise from the state, and ordi- narily in the same manner as if it were a domestic corpo- ration.'' The decisions of the courts of this state have been in harmony with the doctrine of comity as thus applied to foreign corporations, as will be seen from an examination of the following cases: *Anglo-California Bank* v. *Field,* 146 Cal. 644 [80 Pac. 1080]; *American etc. Wireless Co.* v. *Superior Court,* 153 Cal. 533 [126 Am. St. Rep. 125, 17 L. R. A. (N. S.) 1117, 96 Pac. 15]; *H. K. Mulford Co.* v. *Curry,* 163 Cal. 276 [125 Pac. 236]; *People* v. *Alaska P. S. S. Co.,* 182 Cal. 202 [187 Pac. 742]. In the case of *Ameri- can etc. Wireless Co.* v. *Superior Court, supra,* the applica- tion of the doctrine of comity to foreign corporations seeking to transact business in this state was so far extended as to hold that ''A statute of this state which purports to curtail the privilege of foreign corporations to maintain or defend actions in this state, and to impose conditions upon compliance with which alone they may be permitted to do so, will not be construed to extend beyond the plain meaning of its terms considered in connection with its object and purposes. The sections above quoted do not pur- port to forbid a foreign corporation which has failed to comply with its provisions from defending an action brought against it in the courts of this state. They are only for- bidden to maintain actions.'' In so holding, that decision was in harmony with the statement of the similar rule of construction set forth in Murfree on Foreign Corporations, and is also expressed in Fletcher on Corporations in the following terms: ''Repugnancy to the public policy of the

state will not be implied from the mere silence of the state. It must be expressed in some affirmative way. An intention to exclude a foreign corporation, or to prohibit it from doing business and making contracts in a state, or acquiring or holding real property within its limits, is not to be implied from the mere fact that the laws of the state do not provide for the formation of similar corporations, or from the fact that it permits corporations to be formed only under general laws." (8 Fletcher Ency. Corp., par. 5740.) [2] It is a fact of which the court must take judicial notice that the laws of the various states which regulate and prescribe the method for the organization and the measure of the powers of private corporations differ widely, and it is because of these differences that so many cases have arisen and been decided involving the application of the doctrine of comity to corporations seeking to enter other states than those of their creation for the purpose of transacting business therein, and out of this very diversity has been evolved a rule which may almost be said to be a rule of necessity, that corporations which may have been organized in one state in accordance with statutory methods which do not obtain in other states, or have been given powers which corporations organized in other states do not possess, or which have different stock structures, or which have imposed different measures of liability or limitations of liability upon their stockholders, or which have invested such stockholders with divergent voting powers than those allowable in states other than that of their origin, may still be permitted to enter such other states and transact business therein under the doctrine of comity, in the absence of express constitutional or statutory inhibitions on the part of those states which such foreign corporations thus seek to enter. The following are some of the applications of this rule. In the case of *Cowell* v. *Springs Co.*, 100 U. S. 55–59 [25 L. Ed. 547, see, also, Rose's U. S. Notes], the question arose over the attempt of a Pennsylvania corporation, organized under a special statute and invested thereby with extensive powers, to enter the territory of Colorado and transact forms of business therein at a time when Congress had provided that corporations could not be organized in territories except under general laws and that territorial corporations thus created were

not authorized to transact the kinds of business which the Pennsylvania corporation was empowered under its special charter to do. It was argued that if a domestic corporation could not be created with such powers, a foreign corporation could not for the like reason be permitted to exercise them in the territory. In passing upon this question, Mr. Justice Field said: "The answer to this position is found in the general comity which, in the absence of positive direction to the contrary, obtains through the States and Territories of the United States by which corporations created in one State or Territory are permitted to carry on any lawful business in another State and Territory and to acquire, hold and transfer property there equally as individuals. If the policy of the State or Territory does not permit the business of the foreign corporation in its limits or allow the corporation to acquire or hold real property it must be expressed in some affirmative way; and it cannot be inferred from the fact that its legislature has made no provision for the formation of similar corporations or allows corporations to be formed only by general law." In the case of *Saltmarsh* v. *Spaulding,* 147 Mass. 224 [17 N. E. 316], a corporation organized under the laws of the state of New Hampshire had become possessed of certain real property in the state of Massachusetts and undertook by an order, of its board of directors to mortgage the property, the board of directors of said corporation having power under the laws of New Hampshire to adopt and carry into effect such order. Under the laws of the state of Massachusetts governing corporations created thereunder it was provided that a corporation could not convey or mortgage its real estate unless authorized by a vote of the stockholders thereof at a meeting called for that purpose so to do. It was held, however, that the Massachusetts statute referred only to corporations organized thereunder and had not been made expressly applicable to foreign corporations, and that in the absence of an express inhibition the foreign corporation derived its authority to do the act in question by comity from the state of its creation. In the case of *People ex rel. etc.* v. *Fidelity etc. Co. of New York,* 153 Ill. 25 [26 L. R. A. 295, 38 N. E. 752], it was held that the foreign corporation in question might do multiform insurance in Illinois under

198 Cal.—40

the rule of comity which prevails between states, in the absence of an express prohibition in the statutes of Illinois, although such statutes did not authorize the formation of corporations in that state for that purpose. In so holding, the supreme court of Illinois quoted with approval the language of Mr. Justice Field in the case of *Cowell* v. *Springs, supra.* In the case of *United States Fidelity Co.* v. *Linehan,* 73 N. H. 41–43 [58 Atl. 956], it was held on the authority of the Illinois case last above cited that in the absence of an express prohibition in the statute against the business of multiform insurance the comity that prevails between states permits a foreign corporation to do such insurance, although the statutes of the local state do not authorize the formation of corporations for that purpose. In the case of *Clark* v. *Memphis Street Ry. Co.,* 123 Tenn. 232 [130 S. W. 751], it was decided that under the rule of comity between states a foreign corporation authorized so to do by the laws of the state of its creation might purchase and hold the stock of other corporations in Tennessee, although local corporations in that state had not been given the power so to do.

Approaching more immediately the question before us, we are referred to the case of *State ex rel. etc.* v. *Sullivan etc.,* 282 Mo. 261 [221 S. W. 728]. This was a case wherein the relator, a corporation organized under the laws of the state of Delaware for the purpose of engaging, selling, and dealing in railway equipment and appliances, and having a capital structure consisting of one hundred thirty thousand shares, divided into thirty thousand shares of preferred stock, of the par value of one hundred dollars a share, and one hundred thousand shares of common stock without par value, such stock structure being permissible under the laws of that state, undertook to engage in business in the state of Missouri, and applied to the Secretary of State of Missouri for a license so to do. Its said application was refused upon the ground that the constitution of Missouri contemplated corporations with a capital stock of par value shares only (Mo. Const., sec. 21, art. X), and that the statutes of Missouri provided only for the organization of corporations in that state having capital stock of a fixed par value. The relator sought a writ of mandate to compel the issuance to it of the required

license, and thus the direct question presented to this court in the instant case came before the supreme court of that state for decision. That court, after a very exhaustive review of the decisions touching the application of the doctrine of comity between states in its relation to foreign corporations, and also after a very careful consideration of the constitution and laws of Missouri, decided that while as to the latter they provided for the formation of domestic corporations with a capital stock composed of par value shares, and while there was no law in that state authorizing the formation of such corporations with a capital stock not thus divided, it was nowhere expressly provided therein that corporations organized in another state with a capital stock not in whole or part composed of par value shares should be denied admission into said state for the purpose of transacting business therein or should be refused a license so to do. In the absence of such express inhibition it was held that the doctrine of comity between states was susceptible of being given full application to the facts of that case, and hence that the relator was entitled to its writ. In the case of the *North American Petroleum Co.* v. *Hopkins,* 105 Kan. 161 [181 Pac. 625], the petitioner sought a writ of mandate to compel a consideration of the petitioner's application for permission to do business in that state. It appeared from said application that the petitioner was a foreign corporation having a capital stock divided into shares of no fixed or nominal par value, as was permissible in the state of its creation. It further appeared in the record that corporations organized for profit under the laws of the state of Kansas must set forth in their articles or charter the amount of their capital, the number of shares into which that capital was divided, and the number of shares held by each stockholder. The court, while holding that the petitioner as a foreign corporation was not such as to its framework as could be organized as a domestic corporation under the laws of Kansas, it was nevertheless entitled to admission to do business in that state. [3] When we examine the constitution and statutes of the state of California in the light of the liberal application which, according to the consensus of the foregoing authorities, should be given to the doctrine of comity in its application to the admission of foreign corporations

to transact their lawful business in states other than those of their creation, and when we do so with particular reference to the exhaustive consideration of the similar situation presented in the case of *State ex rel. Standard etc. Co.* v. *Sullivan, supra,* we are constrained to hold that as to our statutory law upon the subject there is to be found therein no express inhibition against the admission of foreign corporations entering this state and engaging in business therein, even though it might be that as to their framework, and especially as to the duality of their stock structure, such corporations would not have been entitled to organize as domestic corporations or to receive certificates of incorporation as such under the laws of this state. Nor are we able to discover any such express inhibition in the provisions of the state constitution having relation to the admission and functioning of foreign corporations in this state, unless it is to be found in the language, intent, and meaning of section 15 of article XII of the said state constitution. Said section reads as follows: "No corporation organized outside the limits of this state shall be allowed to transact business within this state on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this state." It is the main contention of the respondent herein that the foregoing provision of the state constitution furnishes full and sufficient ground for his refusal to receive the documents and fees tendered to him by the petitioner herein as the basis for the issuance to it of his official permission to engage in business in this state. We are not, however, satisfied that the respondent is justified in making this contention. [4] The business which a foreign corporation transacts or seeks to transact in the state which it may desire to enter is the business which is contemplated in the expressed purposes of its creation as set forth in its articles of incorporation. This was clearly indicated by this court in its decision in the case of *Miles* v. *Woodward,* 115 Cal. 308–311 [46 Pac. 1076]. That was a case wherein a stockholder of a corporation undertook to recover liquidated damages from a director thereof for an alleged violation of an act of the legislature (Stats. 1880, p. 134) which imposed a liability upon directors of corporations for a failure on their part

to make and post weekly reports in the manner required by the act. It was contended that the act was unconstitutional because it operated only upon domestic corporations and thus enabled foreign corporations to transact business in this state upon more favorable conditions than domestic corporations might under the requirements and penalties of said act, but this court held that the said act related merely to the internal affairs of corporations and not to its outside dealings or the conduct of the business it was organized to engage in. The subject was further clarified by the case of *General Conference etc.* v. *Berkey*, 156 Cal. 466 [105 Pac. 411], wherein it was held that a corporation organized in another state solely for "religious, missionary, educational and charitable purposes," and having acquired a piece of real estate in California, and seeking to sell and dispose of the same, was not required to comply with sections 593 and 598 of the Civil Code, applicable to the sale by domestic corporations of property of like character. This court held that the purposes for which said foreign corporations were organized being those above set forth, it was not to be held, by virtue of the doing of the single and incidental act referred to, to be engaged in the transaction of business in this state within the purview of section 15 of article XII of the constitution. The business which the petitioner herein was organized to transact, according to the declared purposes of its articles of incorporation, was primarily that of a corporation dealing in securities of all kinds and also of engaging in other lines of business germane to the main purpose of its organization. [5] The respondent herein contends that a foreign corporation organized for the foregoing purposes may not, under the foregoing inhibition of the constitution, be permitted to enter the state of California and transact business herein, for two reasons: First, that because of its dual stock structure its stockholders have not an equality of voting power; and, second, that for the same cause its stockholders are not subject to an equality of liability. As to the first of these reasons, it would seem that the matter of the equality or inequality of voting power in its stockholders is one which concerns merely the internal organism of the corporation and has nothing whatever to do with the transaction of the business of the corporation as between itself and the

outside world; and that this being so, the language of this court in the case of *Miles* v. *Woodward, supra,* with this section of the constitution immediately in mind, may be aptly applied, "The constitution was not designated to limit the powers of the legislature when dealing with the organization and government of corporations which are created by its own will and act; over such corporations it has and may exercise full powers of control. Over the organization and internal government of foreign corporations it has no such power. The laws of the state do not have extraterritorial force. It would be meaningless for this state to try to legislate upon the internal affairs of such foreign corporations, and it has not attempted to do so." Applying these principles we are of the opinion that the question as to whether the stockholders of this foreign corporation have or have not an equality of voting power in the management of its internal affairs is not involved in the present inquiry. [6] With respect to the second proposition urged by the respondent, to the effect that this petitioner, if granted permission to enter California for the transaction of business therein, with its aforesaid dual stock structure, would be permitted to transact business herein upon more favorable conditions than domestic corporations can under the stock structure required by the present laws of the state, conceding, for the sake of argument, that the regulations which a corporation adopts as to the basis of liability of its stockholders has such a relation to the transaction of its business as declared in its articles of incorporation as to bring it within the terms of the foregoing section of our state constitution, it does not follow therefrom that the permit of the petitioner should be denied. The authorities to which the respondent has cited us with relation to the liabilities of stockholders of foreign corporations hold that the stockholders of such corporations, regardless of the laws of the state wherein they were organized or of the exemptions or other conditions affecting such stockholders and their liabilities under said laws or under the terms of the charter of such foreign corporations, are subjected to the same liabilities as are the stockholders of domestic corporations when such foreign corporations see fit to enter California for the purpose of transacting business therein. It was so held in the case of *Provident Gold*

*Min. Co.* v. *Haynes,* 173 Cal. 44 [159 Pac. 155], and in the earlier decisions of this court cited therein. (*Thomas* v. *Wentworth Hotel Co.,* 158 Cal. 275 [139 Am. St. Rep. 120, 110 Pac. 942]; *Peck* v. *Noee,* 154 Cal. 351 [97 Pac. 865]; see, also, *Thomas* v. *Matthiessen,* 232 U. S. 221 [58 L. Ed. 577, 34 Sup. Ct. Rep. 312, see, also, Rose's U. S. Notes]; *Pinney* v. *Nelson,* 183 U. S. 144 [46 L. Ed. 125, 22 Sup. Ct. Rep. 52].) The question of how this equalized liability of the stockholders of a foreign corporation is to be established and enforced is one which would be determinable by the courts when it arose in a proper case, but we do not think it is presentable upon the threshold of the proposed entry of such foreign corporation for the purpose of transacting business in this state, nor that it is involved in the present inquiry. We do not deem it necessary to determine whether or not section 15 of article XII of the constitution is self-executing, since we find no present reason for its application to the instant proceeding.

Let the writ issue as prayed for.

Shenk, J., Waste, C. J., Lennon, J., Lawlor, J., and Seawell, J., concurred.

Rehearing denied.